# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TAYLOR LAMBERT,

    Plaintiff,

    v.

INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED
CRAFTWORKERS,

    Defendant.

Civil Action No. 23-309 (CKK)

## MEMORANDUM OPINION
(September 29, 2023)

Plaintiff Taylor Lambert, proceeding *pro se*, brought an action in the Superior Court of the District of Columbia against Defendant International Union of Bricklayers and Allied Craftworkers ("BAC" or "Defendant"), alleging that Defendant violated the Title VII of the Civil Rights Act of 1964 and "other Civil Rights Acts." *See generally* Compl. Defendant removed this action from D.C. Superior Court to federal court based on federal question jurisdiction. Now pending before the Court is Defendant's [7] Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court shall **GRANT** Defendant's Motion to Dismiss.

---

[1] The Court's consideration has focused on the following documents:
- Plaintiff's Complaint, ECF No. 1-1 ("Compl.");
- Defendant's Motion to Dismiss, ECF No. 7 ("Def.'s Mot.");
- Plaintiff's Opposition to Motion to Dismiss, ECF No. 18 ("Pl.'s Opp'n");
- Plaintiff's Exhibits in Support of her Opposition to Motion to Dismiss, ECF No. 19 ("Pl.'s Ex.")
- Defendant's Reply Brief to Support Motion to Dismiss, ECF No. 20 ("Def.'s Reply").

In an exercise of its discretion, the Court finds that holding oral 13 in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

## A. Plaintiff's Employment with BAC

Plaintiff Taylor Lambert worked for Defendant BAC as a temporary employee from 2015 to 2018, and then as an intern from 2018 to 2019. Pl.'s Opp'n at 8. She was hired as a full-time data entry clerk in March 2019 and was promoted to administrative bookkeeper in November 2020, the position she held until her separation in October 2021. *Id.*; Compl. at 1; Def.'s Mot. Ex. 1 ("Pl.'s EEOC Charge") at 2. She was a member of a bargaining unit represented by a non-BAC union for the purposes of dealing with BAC management. *See* Pl.'s EEOC Charge at 2.

Plaintiff alleges that during her tenure at BAC, she experienced retaliation, harassment, and discrimination as a minority. *Id.*; *see also* Pl.'s Opp'n at 6. Plaintiff broadly states that between March and October 2021, BAC "induced practices and policies that produced unfavorable outcomes amongst majority of the minorities" and "deprived most minorities from necessary resources, causing disparate impacts amongst said groups." Compl. at 1. She also alleges that between August 2021 and present, BAC "[s]abotaged the livelihood of [Plaintiff] and other minorities under false pretenses." *Id.* However, she only points to two distinct events that form the basis of her allegations.

## B. March 2021 Suspension

First, Plaintiff alleges that in March 2021, she and other members of the bargaining unit took various actions to draw attention to the fact that a certain group of employees—which included eighty-five percent of BAC's white employees—received a cost of living increase while those who were members of the bargaining unit—which included sixty-nine percent of BAC's Black employees—did not. Pl.'s Opp'n at 13. These actions included sending emails to BAC management, changing their social media profile pictures, and editing their email signatures. *Id.*

at 13–14.

On March 23, 2021, the scheduled date for the bargaining unit's contract negotiations, Plaintiff was summoned to an investigatory meeting on Zoom to discuss "events that took place… in… January of 2021." Pl.'s Opp'n at 9. These "events" were, according to a memorandum from BAC to Plaintiff, submitting a false invoice for orthodontic services in order to collect money from a BAC benefit plan. *See* Def.'s Mot. Ex. 2; *see also* Def.'s Reply at 2. At the meeting, BAC General Counsel Bridget O'Connor called Plaintiff a liar and "arbitrarily questioned [her]… about unrelated allegations of drugs being sold in the building, which I had no knowledge of or any connections to." Pl.'s Opp'n at 9–10; *see also id.* at 15. Others at the meeting allegedly commented afterwards on how poorly Plaintiff was treated. *Id.* at 15.

A few days later, Plaintiff was suspended for two weeks, which was allegedly twice as long as that of two male coworkers—one white and the other Black—who committed similar offenses, and the same duration as a Black man with a greater offense. *Id.* at 10, 16; Pl.'s EEOC Charge at 2. She argues that this was BAC retaliating against her, ostensibly for her participation in the various bargaining unit actions described above. Compl. at 1; Pl.'s Opp'n at 14. In April 2021, the bargaining unit filed a grievance regarding Plaintiff's suspension, but BAC refused to reduce her suspension or provide backpay. Pl.'s Opp'n at 10; Pl.'s EEOC Charge at 2. The bargaining unit continued to fight for Plaintiff until June 2021. Pl.'s Opp'n at 10.

### C. BAC's COVID-19 Vaccine Policy

The second event of which Plaintiff complains relates to BAC's COVID-19 vaccine policy ("Vaccine Policy" or "Policy"). Plaintiff alleges that BAC's outside counsel, Kathleen Keller, advised BAC on EEOC compliance with vaccine mandates in May 2021. *Id.* at 25. Plaintiff claims that on June 6, 2021, BAC emailed all employees notifying them that those

engaged in work-related travel would be required to be vaccinated for COVID-19. *See id.* at 6–7, 21; *see* Def.'s Reply Ex. 5 (copy of email). Specifically, the email stated that "[p]roof of vaccination (vaccination card) will be requested before you engage in business travel. Exceptions will be available only for those who cannot be vaccinated because of a disability or sincerely-held religious belief," Def.'s Reply Ex. 5 at 3–4, but did not otherwise set deadlines for compliance, *see* Def.'s Reply at 3. One of Plaintiff's coworkers asked a higher-up at BAC whether this would apply to all employees and was told that would not be the case. Pl's Opp'n at 7.

On June 16, 2021, BAC held a webinar on vaccine hesitancy for employees engaged in work-related travel. *Id.* at 21. Plaintiff alleges that said group was seventy-five percent white and eleven percent Black; additionally, it was sixty-three percent male and twenty-one percent female. *Id.*; *see also* Pl.'s EEOC Charge at 2.

Plaintiff states that on August 10, 2021, BAC met with bargaining unit representatives regarding a potential company-wide vaccine mandate. Pl's Opp'n at 24. During that meeting, BAC pushed for a deadline of full vaccination by September 7, 2021. *Id.*

Then, on August 19, 2021, BAC issued a policy that required "all employees… to be fully vaccinated against COVID 19, and to provide proof of their vaccination status [] by October 4[, 2021]" or otherwise obtain an accommodation. Def.'s Mot. Ex. 3 ("Copy of Vaccine Policy") at 1. The Policy stated that

> Any employee who has a disability that contraindicates the vaccination, or who objects to being vaccinated on the basis of sincerely held religious beliefs and practices, should use the appropriate attached form to request an accommodation. HRU [Human Resources] will work with the employee to determine if a reasonable accommodation can be provided so long as it does not create an undue hardship for the employer and does not pose a direct threat to the health or safety of others in the workplace. Any such requests should be submitted as soon as possible, and absent extenuating circumstance, no later than September 13.

*Id.* at 3.  The Policy continued that "[a]ny employee who has failed to submit proof that he or she is fully vaccinated against COVID 19 by October 4, and who has not timely requested an exemption pursuant to Paragraph 3 above, will be suspended without pay for one week."  *Id.*  It stated that "[a]ny employee who has failed to submit proof that he or she is fully vaccinated immediately following such one-week suspension will be terminated."  *Id.*

Plaintiff alleges that "[w]hile efforts were made [by BAC] to reiterate the vaccine deadline, no reminders were sent regarding the exemption deadline."  Pl.'s Opp'n at 27.

The Court reads Plaintiff's pleadings as indicating that there were eleven employees who were dissatisfied with the Policy.  *See id.* at 27.  Plaintiff claims that the bargaining unit expressed their concerns regarding the Policy—ostensibly on behalf of these eleven employees, including Plaintiff—and was able to schedule a meeting with BAC management for September 7, 2021 to ask for an extension.  *Id.* at 7.  BAC allegedly postponed the meeting twice.  *Id.* at 7–8; *see also id.* at 26.  On September 20, 2021, a bargaining unit representative was finally able to meet with BAC management, wherein the representative "advocated for the accommodation request."  *Id.* at 27.  Ms. O'Connor and Human Resources Assistant Director Edna Roper informed the representative that the deadline to request an accommodation (September 13) had passed.  *Id.*  The following day, September 21, 2021, Plaintiff received an email from Ms. Roper "reiterating the vaccine deadline and also informing [her] of the [h]ybrid work extension."  *Id.*

Plaintiff also alleges that she had prepared a religious exemption request, which included a personal letter from her pastor.  *Id.* at 39; *see also* Pl.'s Ex. 35 (draft of her

accommodation request).  She claims that a coworker's negative experience with the
ADA interactive process when requesting prior accommodations unrelated to the Policy
"played a part in [her] discouragement [] from submitting my religious exemption."  Pl.'s
Opp'n at 39.  She never submitted that drafted request for an accommodation, nor did she
notify BAC of any "extenuating circumstance" that prevented her from submitting such a
request. *See* Def.'s Reply at 4–5.

### D.  Plaintiff's Separation from BAC

On October 4, 2021, Plaintiff contacted her manager, Dionne Cummings, that she would
be using sick leave that day, as she was not feeling well. Pl.'s Opp'n at 10.  She also emailed
Human Resources Assistant Director Edna Roper stating that she had "no desire to inject myself
with a vaccine" and "[t]herefore I will no longer be an employee at bricklayers as result of the
company refusing to allow testing options for the 'small' number of employees that are hesitant
to getting vaccinated." *Id.* at 33; *see also* Def.'s Mot. Ex. 4 at 1 (copy of Plaintiff's email).  She
ended the email with "[t]hank you for the opportunity."  Pl.'s Opp'n at 10; Def.'s Mot. Ex. 4 at 1.
Plaintiff alleges that she "felt safe doing so because at the time, I was presumed to already be
suspended" and "soon to be terminated" as a result of not getting vaccinated  Pl.'s Opp'n at 10,
33, 8.

Plaintiff alleges that after taking a nap, she checked her email and was redirected to a
page stating she no longer had access to her account. *Id.* at 10–11, 34.  During previous
suspensions, she had retained access to her work email, so she was unsure of what was taking
place. *Id.* at 34.  The following day on October 5, 2021, a coworker told Plaintiff that BAC had
notified Ms. Cummings that she had resigned. *Id.* at 11.  Plaintiff texted Ms. Cummings and told
her that she did not resign; she also contacted her representatives at the bargaining unit for

advice.  *Id.*  Both Ms. Cummings and her representatives told her to contact Human Resources.

*Id.*  Plaintiff alleges that her email to BAC was "intentionally misconstrued into a resignation."

*Id.* at 8.

On October 7, Plaintiff emailed BAC's President Timothy Driscoll, Ms. O'Connor, Ms.

Roper, and others to tell them she did not resign.  *Id.* at 11; Pl.'s EEOC Charge at 2.  In this

email, Plaintiff also "shed light to [sic] the discrimination [she] received throughout the years."

Pl.'s Opp'n at 11.  Plaintiff did not receive a response to this email.  *Id.*  On October 15, 2021,

Plaintiff received a letter dated October 5, 2021 that confirmed BAC's decision to consider her

October 4 email as a resignation, effective on October 4.  *Id.*; Pl.'s EEOC Charge at 2.  BAC

never sent her a termination letter.

Plaintiff alleges that five of the six BAC employees that were adversely affected by the

Policy were Black, and all three employees that were eventually terminated due to being

unvaccinated, herself included, were Black.  Pl.'s Opp'n at 25; *see also* Pl.'s Ex. 7 (chart created

by Plaintiff).  However, in Plaintiff's EEOC charge, she claimed that "seven women and one

LGBTQ man (all minority) [] were the only ones adversely affected by the [Defendant's] Covid

19 Vaccination policy."  Pl.'s EEOC Charge at 2.  The Court notes that these alleged statistics

cannot both be true (Plaintiff's exhibit, attached to her opposition briefing, noted that six

employees were adversely affected, while Plaintiff's EEOC charge stated that eight employees

were adversely affected).

Plaintiff also alleges that BAC lied about imposing a vaccine policy for all office

employees, because maintenance, cleaning crew, contractors, and more did not have to be

vaccinated but could instead comply with a testing opinion.  Pl.'s Opp'n at 29.

Plaintiff's bargaining unit pursued grievances related to her alleged termination.  In mid-

October, the bargaining unit filed a grievance attempting to reclassify her resignation as a termination.  Pl.'s Opp'n at 11; Pl.'s EEOC Charge at 2.  This grievance was later denied at a meeting with Human Resources and BAC's outside counsel.  Pl.'s EEOC Charge at 2.  On October 25, 2021, the bargaining unit filed a separate "class action" grievance regarding the Vaccine Policy "on behalf of the minority employees that were wrongfully terminated due to the Employer's Covid-19 Vaccination Policy."  Pl.'s Opp'n at 28; Pl.'s EEOC Charge at 2; *see also* Pl.'s Ex. 19 (copy of grievance report form).  The grievance asked for said employees to be given "equal treatment and time to obtain an approved exemption or vaccination as the employees that traveled."  Pl.'s Opp'n at 28; *see also* Pl.'s EEOC Charge at 2.  At a meeting on November 11, 2021 regarding this grievance, the bargaining unit advocated for Plaintiff's "personal leave that was stripped away from [her] due to the Employer choosing to assume that [she] resigned from [her] position."  Pl.'s Opp'n at 28.  The grievance was denied that day at the meeting.  *Id.*; *see also* Pl.'s EEOC Charge at 2.  The bargaining unit pursued it further, but BAC again denied it on November 18, 2021.  Pl.'s Opp'n at 28.  Then on January 21, 2022, BAC offered Plaintiff a settlement "to resolve the grievance… filed challenging BAC's non-payment of accrued leave upon [her] separation from employment."  Pl.'s Ex. 22 (tendered settlement agreement); *see also* Pl.'s Opp'n at 28.  Although the bargaining unit supported and was willing to sign the settlement agreement, Plaintiff did not sign it.  *See* Pl.'s Ex. 23 (email communication regarding settlement agreement); *see also* Pl.'s Opp'n at 28.  Elsewhere in her pleadings, Plaintiff states that "the Union fought months to amend the Defendant's malpractice" but that "[i]n January of 2022 the union was forced to withdraw as a result of the Employer's unwavering conviction."  *Id.* at 11.  It is unclear what grievance, if any, Plaintiff was referring to in this remark.

Plaintiff then filed an EEOC complaint on June 22, 2022, wherein she alleged that she

had been retaliated and discriminated against on the basis of religion, race, color, and sex in violation of Title VII.  Pl.'s EEOC Charge at 2. Plaintiff alleges that BAC falsified information to government authorities to preclude a successful EEOC case, as well as her ability to receive unemployment, between June and August 2022.  Compl. at 1.  On September 19, 2022, Plaintiff was informed that the EEOC would not pursue the case.  Pl.'s Opp'n at 8.

### E.  Procedural History

Plaintiff filed a Complaint in District of Columbia Superior Court on December 13, 2022, alleging that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII") and "other Civil Rights Acts."  Compl. at 2.  Plaintiff requests various remedies, including a "systemic investigation of BAC's discriminatory policies," compensatory damages, litigation costs and fees, punitive damages, backpay of lost benefits, for BAC to "take accountability for their wrondgoings," and compensation for emotional distress.  *Id.* at 1.  Plaintiff demands $2 million in damages.  *Id.* at 4.

On February 3, 2023, Defendant removed the complaint to this Court pursuant to 28 U.S.C. § 1441(a).  *See* Notice of Removal ¶ 3.  Defendant then filed a [7] Motion to Dismiss on February 21, 2023 pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See generally* ECF No. 7.  On March 6, 2023, prior to the deadline to respond to Defendant's Motion to Dismiss, Plaintiff filed a Motion to Remand.  The Court then vacated the briefing schedule and held in abeyance the Motion to Dismiss pending the resolution of Plaintiff's Motion to Remand.  *See* Minute Order, Mar. 8, 2023.  The Court denied the Motion to Remand on July 18, 2023.  *See* Mem. Op., ECF No. 14.  With the [7] Motion to Dismiss now fully briefed, the Court now turns to its resolution.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (RBW); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).  The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## III. DISCUSSION

To begin, the Court addresses the scope of Plaintiff's pleadings as a *pro se* litigant.  Then,

the Court shall move on to considering the merits of Defendant's Motion to Dismiss—but first, the Court notes that Plaintiff's pleadings are unclear as to her exact claims.  In their Motion to Dismiss, Defendant classifies Plaintiff's claims as falling into three categories: (1) claims relating to suspension in March 2021 under Title VII and the District of Columbia Human Rights Act ("DCHRA"); (2) wrongful termination under Title VII and the DCHRA; and (3) other vague allegations of Defendant's wrongdoings.  *See* Def.'s Mot. at 5–8 (headers and analysis distinguishing categories of claims).  In her opposition, Plaintiff does not dispute this categorization, but does raise new facts and arguments.  Defendant, in reply, states that Plaintiff raises new claims, including discrimination based on sex, religion, and race as well as a claim of disparate impact.  *See* Def.'s Reply at 1, 7–10.  The Court will consider Plaintiff to have raised the following categories of claims: retaliation, wrongful termination, discrimination, and disparate impact.

Defendant also references Plaintiff's "allegations relating to the terms and conditions of employment for bargaining unit employees," *id.* at 1, 6; a potential claim for pay disparity, *id.* at 1, 7; and a potential claim for hostile work environment, *id.* at 9–10.  The Court does not find that Plaintiff's pleadings—nor EEOC charge—can be read to state such causes of actions.  Therefore, to the extent that Plaintiff had intended to raise these or any other claims, they are foreclosed.

The Court finds that Plaintiff fails to state any claims for which relief can be granted and, therefore, the Court will **GRANT** Defendant's Motion to Dismiss in its entirety.

### A.  Scope of Plaintiff's Pleadings

Typically, when deciding a motion to dismiss, "a court does not consider matters outside the pleadings."  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C.

2019); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  However, complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and the Court of Appeals has ruled that a court must consider a *pro se* litigant's complaint "'in light of' all filings," *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (quoting *Richardson v. U.S.*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *see also Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (stating that the Court of Appeals has "permitted courts to consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged").  This means that "courts may consider documents filed after a complaint when evaluating a motion to dismiss." *Weise v. Fed. Bur. of Investigation*, No. 20-cv-2572 (JMC), 2022 WL 13947753, at *2 (D.D.C. Oct. 24, 2022). Such documents may include those in response to a motion to dismiss.  *See Brown*, 789 F.3d at 152; *Fillmore v. AT&T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) (JEB) ("the Court, as it must in a case brought by a pro se plaintiff, considers the facts as alleged in both the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss.").

The Court will therefore consider Plaintiff's opposition brief as part of Plaintiff's pleadings for the purpose of resolving Defendant's Motion to Dismiss.

### B. March 2021 Event

Plaintiff argues that her two-week suspension issued in March 2021 violated Title VII's prohibition on retaliation and discrimination.  The Court finds that Plaintiff's claims related to this event fail because they are time-barred under Title VII as well as the analogous state law statute, the DCHRA.

Before suing under Title VII, an aggrieved party must exhaust their administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident or, if they had instituted proceedings with a state or local agency, within 300 days.  42 U.S.C. § 2000e-5(e)(1) (Title VII); *see also Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998); *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997).  A lawsuit following a charge is limited "to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations."  *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995).  "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the responsibility of pleading and proving it."  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)); *see also Irwin v. Dep't of Vets. Affs.*, 498 U.S. 89, 95–96 (1990).

Plaintiff has not alleged that she instituted any proceedings with the D.C. Office of Human Rights or any other state or local agency.  *See* Def.'s Mot. at 6.  However, her EEOC charge was cross-filed with the D.C. Office of Human Rights.  *See id.*; Pl.'s Opp'n at 8. Accordingly, the Court will apply the 300-day deadline.  *See Epps v. Potomac Elec. Power Co.*, No. 18-1423 (CKK), 2019 WL 7902976, at *2 (D.D.C. Sept. 20, 2019).  As Plaintiff did not file her charge until June 22, 2022, any claims predicated on events that occurred before August 26, 2021 are time-barred.  This plainly includes Plaintiff's suspension, which was issued at the end of March 2021.

The same claims are also time-barred under the D.C. Human Rights Act.  The DCHRA has a one-year statute of limitations.  *See* D.C. Code § 2-1403.16(a).  Therefore, as the statute of limitations began running on Plaintiff's suspension-related claims on March 26, 2021, it expired

on March 26, 2022, well before she filed this lawsuit on December 13, 2022.  As Defendant

points out, although the statute of limitations would have been tolled while Plaintiff's EEOC

charge was pending, she also filed her EEOC charge after the statute of limitations had run.  *See*

Def.'s Mot. at 6 (explaining that the statute of limitations expired on March 26, 2022, and

Plaintiff's EEOC charge was filed June 22, 2022).  Accordingly, Plaintiff's claims related to her

suspension are time-barred under the state statute as well.

The Court will therefore **GRANT** Defendant's motion to dismiss as to Plaintiff's claims

regarding her suspension beginning in March 2021.

### C.  Wrongful Termination

Plaintiff alleges that she was wrongfully terminated by BAC.  *See* Compl. at 1 (alleging

"wrongful termination… for my standing on the new policy"); Pl.'s EEOC Charge at 2 (alleging

that she was terminated); Pl.'s Opp'n at 33–37 (discussing her "wrongful termination" claim).

It "has long been settled," however, that under District of Columbia law "[a]n employee

who serves at the will of his or her employer may be discharged 'at any time and for any reason,

or for no reason at all.'"  *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1329 (D.C. Cir. 1999)

(quoting *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991)).  Therefore, D.C.

law presumptively bars wrongful termination claims brought by at-will employees.  *Kornegay v.

AT&T*, No. 05-cv-0001(PLF), 2006 WL 825622, at *4 (D.D.C. March 29, 2006).  Case law is

also clear that in the District of Columbia, "employment is presumed to be at-will, unless the

contract of employment expressly provides otherwise."  *Liberatore*, 168 F.3d at 1328 n. 3 (citing

*Carl v. Children's Hosp.*, 702 A.2d 159, 162 (D.C. 1997)).

Plaintiff has not alleged any facts indicating that her contract of employment was

anything other than at-will.  Plaintiff has also not alleged any facts to support the application of

the limited public policy exception to this doctrine.  *See Liberatore*, 168 F.3d at 1329 (discussing exception).  Accordingly, the Court finds that Plaintiff has failed to state a claim for wrongful termination.

The Court will **GRANT** Defendant's motion to dismiss Plaintiff's claims regarding wrongful termination.

### D. Discrimination on the Basis of Race, Gender, or Religion

Plaintiff also brings a claim for discrimination on the basis of race, gender, or religion. *See* Pl.'s EEOC Charge at 1 (selecting that she was "discriminated based on… color, race, sex, religion").

In order to establish a prima facie case of racial discrimination under Title VII or the DCHRA, a plaintiff must show that "(1) [s]he is a member of a protected class, (2) [s]he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that [her] employer took the action because of [her] membership in the protected class)."  *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002); *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 286 (D.D.C. 2011) (JDB) (analysis same under Title VII and DCHRA).  To survive a motion to dismiss, a plaintiff need not make out a prima facie case of discrimination.  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000).  However, a plaintiff must still allege "facts that, if true, would establish the elements of each claim," *Greer v. Bd. of Trs. Of Univ. of the D.C.*, 113 F. Supp. 3d 297, 310 (D.D.C. 2015) (TSC), and, therefore, "the Court may explore the plaintiff's prima facie case at the dismissal stage to determine whether the plaintiff can ever meet [her] initial burden to establish a prima facie case for Title VII discrimination," *Tressler v. Nat'l R.R. Passenger Corp.*, 819 F. Supp. 2d 1, 5 (D.D.C. 2011) (RLW) (quotation omitted).

As for the first element, no one disputes that Plaintiff is a member of a protected class; she is Black, a woman, and religious, practicing Christianity.  *See* Pl.'s EEOC Charge at 2; Def.'s Mot. at 7.

Next, as for the second element, Plaintiff alleges that she was terminated from her position, which would constitute an adverse employment action.  *See Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").  The Court, however, reads the email Plaintiff sent to BAC management to have been a resignation.

Plaintiff's email to Ms. Roper stated that she had "no desire to inject myself with a vaccine" and "[t]herefore I will no longer be an employee at bricklayers as result of the company refusing to allow testing options for the 'small' number of employees that are hesitant to getting vaccinated."  Def.'s Mot. Ex. 4 at 1 (copy of Plaintiff's email); *see also* Pl.'s Opp'n at 33.  She ended the email with "[t]hank you for the opportunity."  Def.'s Mot. Ex. 4 at 1; Pl.'s Opp'n at 10. BAC understood Plaintiff's email to be a resignation letter, *see* Def.'s Mot. at 5, and on October 5, 2021, sent Plaintiff a letter stating that her resignation was effective on October 4, 2021, Def.'s Mot. at 4 (citing Pl.'s EEOC Charge at 2).  BAC never sent Plaintiff a termination letter or considered her separation to be a termination.  If, based on these facts, the Court were to consider Plaintiff as having resigned, there would be no adverse employment action to satisfy the second element of a discrimination claim.  *See Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010) ("Resignations or retirements are presumed to be voluntary").  Furthermore, if viewed as a resignation, it could be said that BAC never enforced the Vaccine Policy against Plaintiff because she preemptively resigned before they could do so.  The Court would agree with such a

characterization.

However, in their briefing, Defendant addressed the legal issues in the context in which Plaintiff framed them, albeit loosely, which was that she was terminated by BAC.  *See* Def.'s Reply at 5 ("Assuming for purposes of this motion that Plaintiff did not resign but was discharged for noncompliance with the Vaccine Policy…").  Accordingly, the Court will assume for the instant analysis that Plaintiff was in fact terminated.  The Court nevertheless finds that Plaintiff fails to plead facts sufficient to satisfy the third element, that is, to allow an inference that her race, gender, or religious beliefs were the reason for her alleged termination following her noncompliance with BAC's Vaccine Policy.

Plaintiff has failed to plead facts that plausibly allege that the Vaccine Policy was discriminatory on its face.  The Policy applied evenly to "all employees."  *See* Copy of Vaccine Policy at 1.

Plaintiff has also failed to plead facts that plausibly allege that the Vaccine Policy was applied in a discriminatory manner so as to cause her termination.  Plaintiff offers nothing suggesting that the Policy did not apply equally to all BAC employees, nor that anyone who failed to comply with the Policy was not ultimately terminated.  *See* Copy of Vaccine Policy at 3; *see generally* Pl.'s Opp'n.  As Defendant explains, Plaintiff "does not claim that white, non-Christian, or male employees who failed to submit proof of vaccination or an accommodation request were allowed to continue working at BAC after October 4, 2021," "[n]or does she allege that accommodation requests by white, non-Christian, or male employees were granted, and that requests by African American, Christian, or female employees were denied."  Def.'s Mot. at 7.

Next, Plaintiff has failed to plead facts that plausibly allege that the Vaccine Policy was issued with discriminatory intent.  Plaintiff argues that the promulgation and roll-out of BAC's

Policy was done intentionally to negatively impact Black employees.  Pl.'s Opp'n at 41 (stating

that BAC's "vaccination policy was intended to be… punitive for the majority of their Black

employees").  Plaintiff references a virtual meeting led by Vice President Kamala Harris and

attended by BAC, during which Vice President Harris "discussed how some groups such as

African Americans have high levels of vaccine hesitancy."  *Id.* at 20.  Plaintiff argues that despite

this, "BAC did not provide any real encouragement to the majority of their Black Employees to

become vaccinated despite being aware of their insecurities with the vaccine."  *Id.* at 38.  She

alleges that BAC "failed to provide all 89% of their black employees with the same resources to

encourage, enlighten and reassure all employees of the 'safety' of the vaccine policy that they

mandated."  *Id.* at 20.  Plaintiff is ostensibly referring to the June 16, 2021 meeting on vaccine

hesitancy for employees who were engaged in work-related travel, who were mostly white and

male.  *Id.* at 21.  She also argues that because employees who engage in work-related travel were

notified that they would be subject to a vaccine on June 6, while all other employees were

notified on August 19, 75% of BAC's white employees had more time to comply with the

mandate.  *Id.* at 38.  But the fact that only employees who engaged in work-related travel—at the

time, the only group that was to be subject to a vaccine mandate—were invited to a meeting on

vaccine hesitancy does not make the Policy discriminatory, nor does the fact that they received

earlier notice—at which time, again, they were the only group subject to a vaccine mandate.  The

Court also notes that BAC did in fact provide information and encouragement about the vaccine

to all employees.  *See* Pl.'s Exs. 8, 9 (BAC press releases encouraging all employees to get

vaccinated, available on BAC's Intranet); Pl.'s Ex. 10 (screenshots of BAC social media posts

encouraging vaccination).

Finally, Plaintiff has also failed to plead facts that plausibly allege that she was

terminated for reasons other than her violation of the Policy.  BAC's Vaccine Policy required proof of vaccination by October 4, 2021.  *See* Copy of Vaccine Policy at 1.  Plaintiff did not provide such proof, but instead emailed Ms. Roper stating that she had "no desire to inject myself with a vaccine" and "[t]herefore I will no longer be an employee at bricklayers as result of the company refusing to allow testing options for the 'small' number of employees that are hesitant to getting vaccinated."  Pl's Opp'n at 33; Def.'s Mot. Ex. 4 at 1.  Plaintiff even admits that she "chose not to comply" with the Policy.  Pl.'s Opp'n at 37.  However, she argues that she was not terminated for her noncompliance, but instead "because [she] was not given the same amount of time to comply with their policy or find another job as 75% of BAC's white employees."  Pl.'s Opp'n at 37.  Again, Plaintiff is presumably referring to the June 6, 2021 email imposing a vaccine policy for employees engaged in work-related travel, most of whom were white, and the June 16, 2021 meeting on vaccine hesitancy for said employees.  As the Court explained above, the fact that employees who engaged in work-related travel were aware that they would be subject to a vaccine mandate before all other employees were in fact subject to such a mandate does not make the Policy discriminatory nor allow for the inference that Plaintiff was terminated for any reason other than her own admitted failure to comply with the Policy.  The Court therefore finds that Plaintiff has failed to state a claim for discrimination based on race, gender, or religion.

The Court will **GRANT** Defendant's motion to dismiss Plaintiff's claims regarding discrimination in violation of Title VII and the DCHRA.

### E.  Disparate Impact

Plaintiff also alleges that BAC "induced practices and policies that produced unfavorable outcomes amongst majority of the minorities [and] deprived most minorities from necessary

resources, causing disparate impacts amongst said groups." Compl. at 1. Plaintiff also claims that BAC's Vaccine Policy was "discriminatory in practice" against minorities, including herself, and had a "disparate impact… on minorities." Pl.'s Opp'n at 19–21, 8. The Court will consider these claims under a disparate impact theory. *See* Def.'s Reply at 9 (discussing "Plaintiff's disparate impact theory").

To establish a prima facie case of disparate impact under Title VII and the DCHRA, a plaintiff must show that a facially neutral employment policy or practice has a disproportionately adverse effect on a protected class. *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009) (citing 42 U.S.C. § 2000e–2(k)(1)(A)); *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (discussing "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity"); *Davis v. District of Columbia*, 925 F.3d 1240, 1248 (D.C. Cir. 2019) (stating that disparate impact claims are analyzed the same under both Title VII and the DCHRA). The plaintiff's initial burden is to identify the specific employment practice allegedly causing a disparate effect, *see* 42 U.S.C. § 2000e-2(k)(B)(i), and to make "a threshold showing of" a "significant statistical disparity" caused by that practice, *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009) (citation omitted). Although at the pleading stage, a "plaintiff is not required to prove that the employment practice caused a disparate impact," *Young v. Covington & Burling LLP*, 736 F. Supp. 2d 151, 161 (D.D.C. 2010) (RBW), it is "not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact," *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 199 (D.D.C. 2017) (ABJ) (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)), *aff'd sub nom. Menoken v. Pon*, No. 17-5228, 2018 WL 2383278 (D.C. Cir. May 9, 2018). A plaintiff must "make allegations that state a 'cognizable

claim.'"  *Young*, 736 F. Supp. 2d at 161 (quoting *Lewis v. City of Chicago*, 560 U.S. 205, 212 (2010)).

The facially neutral employment policy at issue here is BAC's Vaccine Policy.  *See* Copy of Vaccine Policy at 1 (Policy expressly stated that it applied to "all employees").

As for the disproportionately adverse effect on a protected class, the Court will, as above, consider Plaintiff's separation to be a termination for the purposes of the following analysis despite strong evidence to the contrary.  Plaintiff alleges that most of the employees terminated following the Policy were women.  *See* Pl.'s EEOC Charge at 2 (stating that "the seven women and one LGBTQ man (all minority) [] were the only ones adversely affected by the [Defendant's] Covid 19 Vaccination policy").  She also claims that "[a]ll employees terminated from BAC *due to being unvaccinated* were Black."  Pl.'s Opp'n at 39 (emphasis added).  She alleges that only one white employee was adversely impacted by the Policy and zero were terminated for being unvaccinated, while five Black employees were adversely impacted and three were terminated *for being unvaccinated*.  *See* Pl.'s Ex. 7 (emphasis added).  Put differently, five of the six BAC employees that were adversely affected by the Policy were Black, and all three employees that were eventually terminated due to being unvaccinated were Black.  *Id.*; Pl.'s Opp'n at 25.  Importantly, Plaintiff herself recognizes that these employees were terminated due to their failure to adhere to the Vaccine Policy.  The Court also notes, as it did previously, that these alleged statistics cannot both be true (Plaintiff's exhibit, attached to her opposition briefing, noted that six employees were adversely affected, while Plaintiff's EEOC charge stated that eight employees were adversely affected).

The Court finds that Plaintiff has failed to show causation between the Policy and the proffered disproportional effect.  A plaintiff bringing a disparate impact theory must "offer

statistical evidence of a kind and degree sufficient to show that the practice in question has

caused the [disproportionately adverse effect] because of their membership in a protected group."

*Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988); *see also Tex. Dep't of Hous. &*

*Cmty. Affs. v. Inclusive Comtys. Proj., Inc.*, 576 U.S. 519, 543 (2015).  Showing mere

"imbalance" is insufficient; instead, a plaintiff must demonstrate a causal link between the

challenged employment practice and the resulting disparate impact.  *Wards Cove Packing Co.,*

*Inc. v. Atonio*, 490 U.S. 642, 657 (1989).  Plaintiff has not presented any facts indicating that the

Policy *caused* the disproportionate termination of Black or women employees.  Again, she

admits that those employees, herself included, were terminated because of their own voluntary

failure to adhere to the Policy and failure to request an accommodation.  Furthermore, were the

Court to consider Plaintiff's separation to instead be a resignation, this would go one step further:

Not only did Plaintiff voluntarily violate the Policy, she also voluntarily resigned prior to having

the Policy enforced against her.

　　　　Plaintiff claims that because Black employees are more likely to have vaccine hesitancy,

which BAC was aware of, BAC should have taken that into account and provided them with

additional resources or more time to comply with the Policy.  *See* Pl.'s Opp'n at 20–21.  Instead,

Plaintiff argues, BAC "failed to provide all 89% of their black employees with the same

resources to encourage, enlighten and reassure all employees of the 'safety' of the vaccine policy

that they mandated."  *Id.* at 20.  Plaintiff again points to the vaccine hesitancy webinar attended

only by employees engaged in work-related travel, a group that was seventy-five percent white

and sixty-three percent male.  *Id.* at 21.  She continues that although BAC had "the ability to

email the recording of the Vaccine Hesitancy Webinar to all employees, BAC chose not to."  *Id.*

at 22.  However, as the Court mentioned above, BAC did provide information about vaccines to

all employees and encouraged all employees to get vaccinated, which Plaintiff does not deny. She cites to BAC press releases encouraging all employees to get vaccinated, *id.* at 23 (citing Pl.'s Exs. 8, 9), which were available to all employees on BAC's Intranet, *see* Def.'s Reply at 3, and also provides screenshots of BAC's social media posts encouraging vaccination, *see* Pl.'s Ex. 10.

Furthermore, the Policy permitted all employees, regardless of race, to seek accommodations as an alternative to getting vaccinated. *See* Copy of Vaccine Policy at 3. Plaintiff does not allege that she nor any other Black employees who were ultimately terminated submitted an accommodation. As for herself, to the contrary, she admits that although she had prepared a draft request for an accommodation, she did not submit it. *See* Pl.'s Opp'n at at 39; *see also* Pl.'s Ex. 35 (draft of her accommodation request). Plaintiff does claim that the bargaining unit asked for a meeting with BAC to request an extension and inquire about accommodations and that BAC postponed the meeting twice such that when the meeting was eventually held, the September 13, 2021 accommodation deadline had already passed. Pl.'s Opp'n at 7–8, 27. However, this did not obviate Plaintiff's own obligation to request an accommodation by the stated deadline.

Although statistics show that Black employees are more likely to have vaccine hesitancy, it does not necessarily follow that imposing the Vaccine Policy caused certain Black employees' termination, as they had equal opportunity to seek accommodation as their white counterparts or otherwise comply with the Policy. *Cf. Brown v. Mayorkas*, No. 20-2107 (TJK), 2023 WL 3303862, at *12 (D.D.C. May 8, 2023). Similarly, although there were more white employees who had advance notice of the vaccine requirement due to their engaging in work-related travel and access to a specific vaccine hesitancy webinar, it again does not follow that the Vaccine

Policy caused certain Black employees' termination. *Cf. id.* Plaintiff and two other Black employees chose to not be vaccinated or otherwise submit a timely request for accommodation, which is what led to their termination in accordance with the express language of BAC's Vaccine Policy.

Accordingly, Plaintiff has failed to plausibly allege that the Policy had a disparate impact. The Court will **GRANT** Defendant's motion to dismiss Plaintiff's claims insofar as they were brought under a disparate impact theory.

### F. Other Claims

The Court finds that Plaintiff has failed to plausibly state a claim for any other causes of action, as all other claims would either be barred or are conclusory.

In their reply brief, Defendant referenced Plaintiff's "allegations relating to the terms and conditions of employment for bargaining unit employees," Def.'s Rply at 1, 6; a potential claim for pay disparity, *id.* at 1, 7; and a potential claim for hostile work environment, *id.* at 9–10. The Court does not find that Plaintiff's pleadings can be read to state such causes of actions. Additionally, and importantly, such factual allegations were not mentioned in Plaintiff's EEOC charge. *See generally* Pl.'s EEOC Charge. A lawsuit following an EEOC charge is limited "to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations," *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995), and therefore such claims would be barred for failure to exhaust an administrative remedy, *see* 42 U.S.C. § 2000e-5(e)(1) (Title VII); *Washington*, 160 F.3d at 752 (before suing under Title VII, an aggrieved party must exhaust their administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident or, if they had instituted proceedings with a state or local agency, within 300 days).

In her opposition brief, Plaintiff mentions other issues with BAC.  For example, she includes a list of BAC's "longstanding history of implementing unjust policies" that include disparities regarding pay, life insurance, building access, leave, and more.  *See* Pl.'s Opp'n at 30–32.  She also alleges that "Black employees… are systematically over policed, overly disciplined, denied promotions, denied raises, denied bonuses, belittled…," that "there isn't a single Black Director at BAC," and other broad statements.  *Id.* at 32.  Later, Plaintiff writes that certain members of BAC management's "influence and involvement in Human Resources promotes the toxic work environment."  *Id.* at 40.  To the extent that Plaintiff had intended to incorporate such facts into causes of action, the Court will not read such conclusory statements as such.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's [7] Motion to Dismiss in its entirety.  An appropriate order accompanies this Memorandum Opinion.

           /s/

COLLEEN KOLLAR-KOTELLY
United States District Judge