## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAYLOR LAMBERT, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> TIMOTHY J. DRISCOLL (PRESIDENT) ) <br> CANDICE DUBBERLY (EXECUTIVE ) <br> DIRECTOR OF FINANCIAL MANAGEMENT ) <br> UNIT) INTERNATIONAL UNION OF ) <br> BRICKLAYERS AND ALLIED ) <br> CRAFTWORKERS ) <br> ) <br> ) <br> *Defendants*. ) <br> ) | Case No. 1:23-cv-00309-CKK |

**PLAINTIFF'S AMENDED COMPLAINT PER SCHEDULING ORDER**



RECEIVED
JUL 2 5 2025
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Taylor Lambert
5920 3rd Street NW,
Washington, DC, 20011
Tel:2026835533
tc.lambert16@gmail.com

*Pro Se Plaintiff*

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................1

INTRODUCTION..........................................................................................................1

JURISDICTION..........................................................................................................1-2

BACKGROUND .........................................................................................................2-4

LEGAL STANDARD..................................................................................................4-5

ARGUMENT...............................................................................................................5-11

CONCLUSION ............................................................................................................. 11

## INTRODUCTION

This action brings federal civil-rights, labor, and tort claims against Timothy J. Driscoll, Candice Dubberly and The International Union of Bricklayers and Allied Craftworkers, orchestrated to remedy an unlawful, racially discriminatory, and procedurally deficient vaccine mandate that disproportionately harmed Black employees, including Plaintiff and two other black employees, in violation of Title VII, 42 U.S.C. § 1981, the National Labor Relations Act (NLRA), D.C. Human Rights Act Totality of the Circumstances and relevant ethical and equity standards.

Although BAC acted under the veneer of public health compliance and return-to-office urgency, it never resumed full-time in-person operations and its claim that vaccination would "stop transmission" was scientifically false; making the mandate pretextual and coercive. The policy inflicted precise and avoidable harm, was selectively enforced, and denied Plaintiff reasonable religious or medical exceptions despite her union-supported request.

## JURISDICTION

I.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331(federal question jurisdiction), as this case arises under the laws of the United States, including Title VII of the

1

Civil Rights Act of 1964, D.C. Human Rights Act Totality of the Circumstances, 42 U.S.C. § 1981, and the National Labor Relations Act, 29 U.S.C. § 151 et seq.

II.     The Court has supplemental jurisdiction over Plaintiff's related common law and equitable claims pursuant to 28 U.S.C. § 1367, as they arise from a common nucleus of operative facts and form part of the same case or controversy.

III.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the District of Columbia, and Defendant's principal office is located therein.

IV.     Plaintiff has satisfied all jurisdictional prerequisites under Title VII, including timely filing with the Equal Employment Opportunity Commission and receipt of a Notice of Right to Sue.

## BACKGROUND

Plaintiff is a Black woman who interned with the International Union of Bricklayers and Allied Craftworkers (BAC) from the summer of June 2014 through the summer of June 2018, Winter intern December 2018 through March 2019 and worked as a full time employee for the employer from March 2019 until October 2021 as a Data Entry Clerk and later as an Administrative Bookkeeper. Plaintiff was union-represented via a recognized bargaining unit, Local 2. At all relevant times, BAC functioned as both a labor union and an employer, making it subject to civil-rights law, NLRA obligations, and the equitable standards governing federal partners.

In June 2021, BAC rolled out a COVID-19 vaccine mandate first applied only to "traveling" employees (predominantly white), giving them ample time and resources—including access to a live vaccine-hesitancy webinar hosted by the NIH and White House Community Corps.

In August 2021, BAC abruptly expanded the mandate to include all employees—including 89% of Black staff—imposing the same October 4, 2021 vaccine

2

compliance deadline, and a September 13 deadline (17 business days) to submit exemption requests. BAC did not extend the exemption deadline despite delays in accessing doctors or pastors as hundreds of thousands of Federal and Local employees were in pursuit of accessing these sources in effort to comply with the Federal Mandate. Instead, it extended only the general vaccination deadline, notwithstanding the same logistical constraints faced by employees.

All employees who ultimately lost their jobs as a result of the unjust implementation of the policy and resources were Black. While non-black employees who were similarly hesitant or delayed were not terminated and forcefully complied, received accommodations, warnings or a vaccine extension.

Plaintiff and her shop stewards repeatedly requested negotiations regarding deadline extensions and accommodations which is a protected concerted activity under the NLRA. BAC delayed meetings, forced a postponement until after September 13, then refused further negotiation, stating "it's too late, the deadline has passed." No accommodation was ever offered.

Plaintiff was directly contacted by Candice Dubberly, a non-HR supervisor or staff member, regarding her health and vaccination status, bypassing normal HR channels and privacy protocols in which other employees received. This was done without authorization and constituted an invasion of privacy and coercive harassment.

The plaintiff's termination was covered up as a voluntary resignation despite clearly conditional language ("I will no longer…") and without exit procedures, confirmation, or written resignation even after explaining she did not resign to Timothy Driscoll, Candice Dubberly and other BAC authoritative figures. BAC deprived the Plaintiff of paid leave (later issuing a General Release form to receive paid leave in exchange for waiving rights which Plaintiff deneied), unemployment benefits, COBRA rights, and other entitlements.

The combined effect of coercive enforcement, racial exclusion, misrepresentation, and misclassified termination caused Plaintiff severe emotional distress, diagnosed PTSD, anxiety, and loss of livelihood.

BAC's suppression of resources from Black employees, even its own Black HR manager, and reliance on medically inaccurate claims violated not only domestic law but international ethical standards like the Geneva Declaration and U.S. treaty obligations under ICERD and Executive Order 13985.

## LEGAL STANDARD

I.  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient factual matter to "state a claim to relief that is plausible on its face." "Ashcroft v. Iqbal", 556 U.S. 662, 678 (2009); "Bell Atl. Corp. v. Twombly", 550 U.S. 544, 570 (2007). Courts must accept all well-pleaded facts as true and construe them in the plaintiff's favor. "Krieger v. Fadely", 211 F.3d 134 (D.C. Cir. 2000).

II.  Employment discrimination claims under Title VII and 42 U.S.C. § 1981 may proceed under the McDonnell Douglas burden-shifting framework, which requires a plaintiff to plausibly allege:

   a. membership in a protected class;
   b. qualification for the position;
   c. an adverse employment action; and
   d. circumstances giving rise to an inference of discrimination;

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); "Comcast Corp. v. Nat'l Ass'n of African American-Owned Media", 140 S. Ct. 1009 (2020).

III.  A plaintiff may also prevail under a disparate impact theory by alleging that a facially neutral policy caused a disproportionate adverse effect on a protected group without business necessity. "Griggs v. Duke Power Co.", 401 U.S. 424 (1971).

IV.  Under Title VII, employers are required to engage in a good-faith interactive process to accommodate sincerely held religious beliefs unless doing so imposes an undue hardship. EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768 (2015).

V. The NLRA, 29 U.S.C. § 158(a)(1), (5), prohibits employers from refusing to bargain in good faith with employee representatives and from interfering with employees' rights to engage in protected concerted activity. "NLRB v. Katz", 369 U.S. 736 (1962).

VI. Fraudulent concealment is actionable when an employer knowingly withholds material information it has a duty to disclose, intending to mislead and causing harm. "Bennett v. Kiggins", 377 A.2d 57 (D.C. 1977).

VII. Constructive discharge occurs when working conditions become so intolerable that a reasonable person would feel compelled to resign. "Clark Cnty. Sch. Dist. v. Breeden", 532 U.S. 268 (2001).

VIII. A claim for negligent infliction of emotional distress is cognizable where the defendant's conduct was negligent, directed at the plaintiff, and resulted in severe emotional harm. "Jones v. Howard Univ., Inc.", 589 A.2d 419 (D.C. 1991).

IX.     Under the D.C. Human Rights Act and persuasive Title VII case law, courts consider the totality of the circumstances to assess discriminatory intent, including disparities in timing, resources, enforcement, and the employer's failure to reassess policy in light of evolving conditions. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 363 (D.C. 1993).

## ARGUMENT

### I. Racial Disparate Impact & Discriminatory Enforcement of an Unreasonable, Coercive Policy

Timothy Driscoll, as well as the organization, "The International Union of Bricklayers and Allied Craftworkers", implemented a vaccine mandate policy that disproportionately impacted Black employees, providing significantly less time and fewer resources to comply or seek exemptions than were afforded to white employees. This resulted in 100% of terminated employees being Black, despite available federal tools to avoid such disparities.

Timothy Driscoll and The International Union of Bricklayers and Allied Craftworkers justified the policy with pretextual reasons, such as stopping COVID-19 transmission and returning to 100% in-person work, yet never resumed full in-office operations. The policy lacked business necessity and reflected coercive enforcement rather than a balanced public health response.

## II. Invasion of Privacy & Harassment by Director Candice Dubberly Outside Proper Channels

Candice Dubberly, a non-HR supervisor or staff member, bypassed standard procedures and directly contacted Plaintiff regarding her private medical status, without authorization, consent, or medical necessity. This conduct was harassing, invasive, intimidating and outside the scope of her role.

## III. Fraudulent Concealment & Racially Disparate Withholding of Federal Resources

Timothy J. Driscoll, Candice Dubberly and The International Union of Bricklayers and Allied Craftworkers, while a partner in the White House Community Corps, withheld vaccine education and outreach material, intended to address vaccine hesitancy, from 89% of its Black workforce. These resources were shared only with traveling employees which were predominantly white.

Timothy Driscoll, Candice Dubberly and The International Union of Bricklayers and Allied Craftworkers fraudulently concealed this disparity while simultaneously asserting it had provided full transparency and support.

## IV. Constructive Discharge Misclassified as Resignation & Procedural Malpractice

Plaintiff never resigned. Timothy Driscoll, Candice Dubberly and The International Union of Bricklayers and Allied Craftworkers misclassified Plaintiff's termination as a resignation without following its own procedures for voluntary exits. All parties also ignored the Plaintiff's email declaring that she did not resign and was merely providing her status as informed and stance.

No exit interview, confirmation, or written acceptance was provided, violating internal policy and denying Plaintiff due process protections.

6

## V. Negligent Infliction of Emotional Distress Due to a Hostile, Coercive Environment

Timothy Driscoll, Candice Dubberly and The International Union of Bricklayers and Allied Craftworkers, hostile, discriminatory, and coercive policies, actions, and lack thereof, caused Plaintiff severe psychological distress, including PTSD, anxiety, and emotional trauma, all of which were foreseeable and preventable. Plaintiff continues to suffer from the consequences of each of the Defendant's negligent conduct.

## VI. Violations of Title VII, 42 U.S.C. § 1981, & Executive Order 13985

Timothy Driscoll, Candice Dubberly and The International Union of Bricklayers and Allied Craftworkers conduct constituted unlawful race-based discrimination, disparate treatment, denial of equal contract rights, and failure to accommodate, violating Title VII and Section 1981.

As a federal partner, Defendants are further subject to Executive Order 13985, which mandates the advancement of racial equity and prohibits conduct that reinforces systemic barriers.

## VII. Failure to Follow Process, Due Process Norms & Human Rights Standards

Timothy Driscoll, Candice Dubberly and The International Union of Bricklayers and Allied Craftworkers failed to engage in a good-faith exemption process, ignored employee requests, and enforced arbitrary deadlines despite knowing employees faced documented delays due to the pandemic.

This failure violated domestic norms under Title VII and due process values embedded in U.S. constitutional and international law, including ICERD and the Geneva Declaration.

## VIII. NLRA Violation: Failure to Bargain in Good Faith and Interference with Protected Activity (29 U.S.C. § 158(a)(1), (5))

Under the **National Labor Relations Act**, it is an unfair labor practice for an employer to:

A. **Interfere with, restrain, or coerce employees** in the exercise of their rights to engage in concerted activities (§ 158(a)(1)); and

B. **Refuse to bargain collectively in good faith** with the representatives of its employees (§ 158(a)(5)).

Defendant Bricklayers and Allied Craftworkers ("BAC")—while operating as a labor organization—also functioned as Plaintiff's employer. As such, it was subject to the requirements of the NLRA with respect to its internal staff.

At all relevant times, Plaintiff was employed by BAC and was a member of a recognized union.

In or around mid-2021, Plaintiff and other represented employees, through union shop stewards, initiated protected concerted activity by requesting an extension of the exemption deadline tied to BAC's COVID-19 vaccine mandate; a clear condition of employment.

These requests constituted a **mandatory subject of bargaining** because the policy significantly impacted the ability of union members to maintain their employment.

    A. BAC received repeated notice of these concerns and agreed to engage in discussions, but deliberately **delayed meetings** until after the exemption deadline had expired.

    B. When union representatives met with BAC after the deadline, BAC refused to reconsider accommodations or exemption requests, stating "it's too late, the deadline has passed," even though other components of the policy had been extended for different employees.

    C. BAC subsequently **misclassified Plaintiff's separation** from employment as a resignation and denied her procedural and contractual rights as a union-protected employee.

8

BAC's conduct reflects a **pattern of bad-faith negotiation**, deliberate evasion of bargaining obligations, and unlawful retaliation for Plaintiff's protected advocacy.

Plaintiff acknowledges the six-month limitations period under 29 U.S.C. § 160(b). However, this claim is **timely and equitably preserved** under the following doctrines:

**1. Equitable Tolling**

Plaintiff was never informed by BAC or the union of her rights under the NLRA. As a pro se litigant, she only recently discovered that her efforts to negotiate an exemption deadline constituted protected concerted activity under federal labor law. Defendant's failure to disclose relevant information, coupled with its misclassification of Plaintiff's separation, **deprived her of a reasonable opportunity** to assert her rights earlier.

**2. Continuing Violation**

BAC's unlawful conduct did not begin (Plaintiff filed numerous grievances in early 2021 regarding the employer's discriminatory and harsh practices towards her which took place without union representation) or end with its initial refusal to negotiate. The resulting harms including denial of accommodation, misclassification, and post-separation retaliation, **continued to affect Plaintiff well beyond the original policy deadline**, forming part of an ongoing pattern of NLRA violations.

**3. Delayed Discovery of Harm**

To the extent any specific acts occurred outside the six-month window, Plaintiff asserts that the clock did not begin to run until she reasonably discovered the full extent of BAC's violations, including the NLRA's applicability to her case. Plaintiff exercised diligence in pursuing her rights upon discovering the relevant legal protections.

As a direct result of BAC's conduct, Plaintiff suffered:

  a. The denial of a meaningful exemption review;
  b. Constructive discharge and/or wrongful termination;
  c. Loss of income, seniority, and employment benefits;
  d. Retaliation for protected union activity;

e. And emotional distress and reputational harm.

Plaintiff respectfully requests that the Court declare Defendant's conduct a violation of the NLRA, and further seeks:

a. A permanent injunction requiring BAC to **cease and desist** from engaging in further unlawful labor practices;

b. An order directing BAC to **send, post and provide appropriate notices** informing employees of their rights under the NLRA;

c. **An award** of front pay, full **back pay, benefits (such as pension)**;

d. **Make-whole relief** for Plaintiff's economic and non-economic injuries caused by Defendant's refusal to bargain and its retaliatory termination;

e. And any additional **equitable or monetary relief** the Court deems just and proper.

## IX. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award the following relief:

(a) Compensatory damages for lost wages, benefits, and emotional distress;

(b) Back pay and front pay;

(c) Punitive damages for willful and malicious misconduct;

(d) Declaratory judgment that Defendant's actions were unlawful and discriminatory;

(e) Injunctive relief requiring Defendant to revise discriminatory policies and implement anti-bias training;

(f) Damages under 42 U.S.C. § 1981 and the NLRA for racial discrimination and interference with protected activity;

(g) Full make-whole relief under the NLRA, including back pay;

(h) Attorneys' fees, costs of suit, and any expert witness fees incurred;

(i) Prejudgment and post-judgment interest;

(j) Demotion of Timothy J. Driscoll and Candice Dubberly unless they undergo rigorous anti-discrimination training and implement practices

(k) Any other relief the Court deems just and proper.

## CONCLUSION

As a result of the foregoing facts and legal claims, Plaintiff respectfully submits that her **Amended Complaint cures all prior deficiencies** and establishes, under well-settled federal standards, a plausible entitlement to relief. The allegations demonstrate that Defendant's actions were not only discriminatory and procedurally unjust, but also coercive, retaliatory, and violative of clearly established rights under federal, statutory, and ethical law. Accordingly, Plaintiff's amended pleadings state claims upon which relief can and should be granted

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s).

Dated this **25th** Day of **July 2025**

Respectfully submitted,

Taylor Lambert
5920 3rd Street NW
Washington, D.C., 20011
Tel: (202) 683-5533
Tc.lambert16@gmail.com

*Pro Se Plaintiff*

11

## CERTIFICATE OF SERVICE

Plaintiff, Taylor Lambert, hereby certifies that a true and correct copy of the forgoing, supporting documents were filed in the Clerk's office on this 25th day of July 2025. I further certify that counsel for Defendants is a registered CM/ECF user and will be served via the CM/ECF system and via email at the following:

**Caitlin Kekacs** (D.C. Bar # 1019670)- **ckekacs@bredhoff.com**

**Kara A. Naseef** (D.C. Bar # 1671394)- **knaseef@bredhoff.com**

*Counsel for Defendants*

Respectfully submitted,

*/s/ Taylor Lambert*

Taylor Lambert
5920 3rd Street NW,
Washington, DC, 20011
Tel:2026835533
tc.lambert16@gmail.com
*Pro Se Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TAYLOR LAMBERT,

    *Plaintiff,*

v.

TIMOTHY J. DRISCOLL (PRESIDENT)
CANDICE DUBBERLY (EXECUTIVE
DIRECTOR OF FINANCIAL MANAGEMENT
UNIT) INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED
CRAFTWORKERS

    *Defendants.*

Case No. 1:23-cv-00309-CKK

**PROPOSED ORDER**

Upon consideration of Plaintiff Taylor Lambert's Complaint and any responses thereto, and the entire record herein, it is hereby:

**ORDERED**, that Defendant BAC shall respond to the allegations in Plaintiff's Complaint and, upon full adjudication, the Court finds in favor of Plaintiff on one or more of the claims asserted; and it is further **ORDERED**, that Plaintiff is entitled to and shall be awarded the following relief:

1. Back pay, including all wages, benefits, and front pay due to Defendant's unlawful conduct;

2. Compensatory damages for emotional distress, reputational harm, and loss of dignity;

3. Punitive damages based on the Defendant's willful and malicious misconduct;

1

4. Make-whole relief under the NLRA, including restoration of union rights and benefits;

5. Declaratory judgment finding that Defendant's vaccine policy and its enforcement violated Title VII, 42 U.S.C. § 1981, the NLRA, and other applicable laws;

6. Injunctive relief, including but not limited to:

    a. Revision of discriminatory policies and procedures,

    b. A racial equity and inclusion audit supervised by a third-party consultant,

    c. Demotion of "leadership"

    d. Mandatory anti-discrimination and accommodation training for staff and management;

8. Attorneys' fees and costs, including expert witness fees, and any other expenses incurred pursuant to 42 U.S.C. § 1988 and other applicable statutes;

9. Prejudgment and post-judgment interest on all monetary awards;

10. Such other and further relief as the Court deems just and proper.

Dated this ____ day of _____

SO ORDERED:

_____
HON. COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

Copy to:
Caitlin Kekacs and Kara Naseef
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W., Suite 1000
Washington, D.C. 20005
Tel: (202) 842-2600
Fax: (202) 842-1888
ckekacs@bredhoff.com
*Counsel for Defendant BAC*

## CERTIFICATE OF SERVICE

Plaintiff, Taylor Lambert, hereby certifies that a true and correct copy of the forgoing, supporting documents were filed in the Clerk's office on this 25th day of July 2025. I further certify that counsel for Defendants is a registered CM/ECF user and will be served via the CM/ECF system and via email at the following:

**Caitlin Kekacs** (D.C. Bar # 1019670)- **ckekacs@bredhoff.com**

**Kara A. Naseef** (D.C. Bar # 1671394)- **knaseef@bredhoff.com**

*Counsel for Defendants*

Respectfully submitted,

Taylor Lambert
5920 3rd Street NW,
Washington, DC, 20011
Tel:2026835533
tc.lambert16@gmail.com
*Pro Se Plaintiff*

3