**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

TAYLOR LAMBERT,

      Plaintiff,

    v.

INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED
CRAFTWORKERS,

      Defendant.

Civil Action No. 23-0309 (CKK)

**MEMORANDUM OPINION & ORDER**
(July 7, 2026)

In this action, *pro se* Plaintiff Taylor Lambert alleges that her former employer discriminated against her based on her race, leading to her separation from employment in October 2021. Ms. Lambert has filed a proposed amended complaint, which the Court construes as a motion for leave to amend her operative complaint. The Defendants oppose this motion,[1] and Ms. Lambert has filed a reply. Upon consideration of the parties' submissions,[2] the relevant legal authority, and the entire record, the Court shall **GRANT IN PART** and **DENY IN PART** Ms. Lambert's motion. The Court shall **GRANT** leave to amend the operative complaint to (1) add Ms. Lambert's newly proposed factual allegations in support of her claims of race discrimination and (2) add a new race discrimination claim under 42 U.S.C. § 1981. The Court shall otherwise **DENY** leave to amend.

---

[1] The Court uses the term "Defendants" to refer collectively to current Defendant International Union of Bricklayers and Allied Craftworkers ("BAC") and two individual BAC employees who Ms. Lambert proposes to join as parties.

[2] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto: Ms. Lambert's Proposed Amended Complaint, Dkt. No. 38; the Defendants' Opposition to the Plaintiff's Motion for Leave to Amend Complaint, Dkt. No. 40; and Ms. Lambert's Reply in Support of the Motion for Leave to Amend Complaint, Dkt. No. 43. In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

1

## I. BACKGROUND

Plaintiff Taylor Lambert was employed by the International Union of Bricklayers and Allied Craftworkers ("BAC") as a data entry clerk, and later as a bookkeeper, from March 2019 until October 2021. Proposed Am. Compl., Dkt. No. 38, at 2.

Ms. Lambert separated from her employment with BAC in October 2021, after BAC implemented a requirement that all employees become vaccinated against COVID-19. *Id.* at 3. Ms. Lambert alleges that BAC incorrectly characterized her separation as a resignation, when in fact it was an involuntary termination. *Id.*

Ms. Lambert, who is Black, charges that BAC rolled out and implemented its COVID-19 vaccination policy in a racially discriminatory manner. *Id.* at 2–3. Specifically, she alleges that BAC gave more advance notice of the new policy to its "traveling" employees, who were predominantly white, compared to its non-traveling employees, which included a large majority of its employees who were Black. *Id.* She also alleges that BAC provided certain educational resources about the vaccine only to its "traveling" employees, including "a live vaccine-hesitancy webinar hosted by the [National Institutes of Health] and White House Community Corps." *Id.* at 2. She alleges that when BAC decided in August 2021 to expand its vaccination policy to cover all employees, it declined to extend the deadline for employees to become vaccinated or obtain an exemption for medical or religious reasons, leaving non-traveling employees with little time to comply with the policy. *Id.* at 3. Ms. Lambert further alleges that after the rollout of the new policy, one of BAC's employees, Candice Dubberly, personally contacted her "regarding her health and vaccination status," which Ms. Lambert alleges was unusual and constituted an invasion of privacy because Ms. Dubberly was not a member of BAC's human resources team. *Id.*

Ms. Lambert alleges that all of the BAC employees who, like her, lost their jobs as a result of the new vaccination policy were Black. *Id.* She alleges that BAC's actions caused her "severe emotional distress, diagnosed [post-traumatic stress disorder], anxiety, and loss of livelihood." *Id.*

Following her termination, Ms. Lambert filed an administrative charge of discrimination against BAC with the Equal Employment Opportunity Commission and the D.C. Office of Human Rights on June 22, 2022. *See* Charge of Discrimination, Dkt. No. 7-1 at 4–5. In this administrative complaint, Ms. Lambert alleged that BAC discriminated against her on the basis of her race, religion, and sex in connection with her separation from employment in October 2021. *Id.* at 5. Ms. Lambert's administrative complaint also included allegations of retaliation related to a suspension in March 2021 that is not at issue here. *Id.* at 5.

In Ms. Lambert's description of the particulars of her charge of discrimination regarding her separation from employment in October 2021, she named three BAC employees including, as relevant here, BAC President Timothy Driscoll. *See* Dkt. No. 7-1 at 5. Ms. Lambert alleged that after she received notice that BAC considered her to have resigned from her position, she sent an email to Mr. Driscoll and others on October 7, 2021, stating that she did not resign and alleging that her separation from employment was discriminatory and retaliatory. *Id.* Ms. Lambert alleges that no one responded to this email. *Id.*

Ms. Lambert later filed this action in D.C. Superior Court on December 13, 2022, asserting claims of discrimination and retaliation related to her suspension in March 2021 and discrimination and wrongful termination related to her termination in October 2021. *See* Dkt. No. 1-1 at 4–5. BAC removed the action to this Court and moved to dismiss the action for failure to state a claim. *See* Notice of Removal, Dkt. No. 1; Mot. to Dismiss, Dkt. No. 7. The

3

Court granted that motion.  Order, Dkt. No. 21.  Ms. Lambert appealed this dismissal to the U.S. Court of Appeals for the D.C. Circuit, which summarily affirmed the dismissal of her claims related to her March 2021 suspension and her wrongful termination claim.  *Lambert v. Int'l Union of Bricklayers & Allied Craftworkers*, No. 23-7145, 2024 WL 2790386, at *1 (D.C. Cir. May 29, 2024).  After consolidating Ms. Lambert's case with a related case, the D.C. Circuit affirmed this court's dismissal of Ms. Lambert's discrimination claims on all grounds other than race.  *See Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 597–98 (D.C. Cir. 2025).  However, the D.C. Circuit reversed the dismissal of Mr. Lambert's claims of race discrimination and remanded those claims to this Court for further proceedings.  *Shanks*, 134 F.4th at 598.

Upon remand to this Court, BAC filed an Answer on June 27, 2025, and the Court ordered that "the deadline to join additional parties or amend pleadings" would be July 25, 2025.  Answer, Dkt. No. 34; Minute Order (July 2, 2025).

On the day of the deadline to amend pleadings or join additional parties, Ms. Lambert filed a proposed Amended Complaint.  Dkt. No. 38.  In this filing, Ms. Lambert proposes to add new factual allegations in support of her Title VII and D.C. Human Rights Act ("DCHRA") claims; to add a race discrimination claim under 42 U.S.C. § 1981; to join BAC President Timothy Driscoll and BAC Executive Director Candice Dubberly as Defendants; to add tort claims for invasion of privacy, "Fraudulent Concealment," "Procedural Malpractice," and negligent infliction of emotional distress; to add a claim under Executive Order No. 13,985; to add a claim of "Failure to Follow Process, Due Process Norms & Human Rights Standards" under U.S. and international law; and to add claims under the National Labor Relations Act ("NLRA") alleging unfair labor practices.  *Id.*  Ms. Lambert does not seek to reassert her

previously dismissed claim of retaliation arising from her suspension in March 2021 or her claims of discrimination on grounds other than race. *See id.*

The Defendants have filed an opposition to Ms. Lambert's proposed amendment, and Ms. Lambert has filed a reply. Defs.' Opp'n, Dkt. No. 40; Pl.'s Reply, Dkt. No. 43. Ms. Lambert's proposed amendment, which the Court construes as a motion for leave to amend her operative complaint, is ripe for decision.

## II. LEGAL STANDARD

After 21 days have passed since the filing of a responsive pleading or a motion to dismiss, a plaintiff may amend the operative complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The court "should freely give leave [to amend] when justice so requires," but the court may deny its leave if the proposed amendment would be futile. *See id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment is futile "if the amended complaint would not withstand a motion to dismiss." *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim clears this hurdle "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In this analysis, "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).

Although the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).  Similarly, courts do not assume the truth of a complaint's legal conclusions. *Id.*

In this case, Ms. Lambert is proceeding *pro se*.  The pleadings of *pro se* litigants are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  When evaluating a *pro se* complaint, the Court must read that pleading "'in light of' all filings" in the case and decide its sufficiency based on "the facts alleged in *all* of [the *pro se* plaintiff's] pleadings." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).  A *pro se* plaintiff may, "in effect, supplement [her] complaint with the allegations included in [her] opposition." *Id.*

### III. ANALYSIS

Ms. Lambert's proposed amendments to her complaint properly add new factual allegations in support of her race discrimination claims and one new cause of action arising from those claims.  The Defendants do not oppose those proposed amendments, and the Court shall allow them.  However, Ms. Lambert's proposed amendments also seek to assert new causes of action that are not included in her currently operative complaint.  These proposed amendments do not state claims upon which relief can be granted under the additional causes of action she has proposed.  The Court shall therefore deny leave to add these causes of action because they would not withstand a motion to dismiss.  Accordingly, the Court shall **GRANT IN PART** and **DENY IN PART** Ms. Lambert's motion for leave to amend his complaint.

**A.      The Court shall allow Ms. Lambert's proposed amendments related to her race discrimination claims, which are unopposed.**

The Defendants do not object to Ms. Lambert's proposal to amend her complaint to add factual detail in support of her Title VII and DCHRA claims related to her termination.  Defs.' Opp'n at 1, 3.  The Defendants also do not object to Ms. Lambert's proposal to assert a new claim under 42 U.S.C. § 1981 alleging race discrimination in connection with her termination, provided that the Section 1981 claim is properly construed as an allegation of intentional discrimination rather than a disparate-impact claim.  *Id.*; *see Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005) (explaining that a Section 1981 claim requires a showing of "intentional discrimination").   Accordingly, the Court shall **GRANT IN PART** Ms. Lambert's motion.  Specifically, the Court shall allow Ms. Lambert's proposed amendments to the factual allegations supporting her disparate-treatment and disparate-impact race discrimination Title VII and DCHRA claims, as well as her new disparate-treatment claim under Section 1981.  Because the Defendants have not objected to Ms. Lambert's inclusion of two senior BAC employees, Mr. Driscoll and Ms. Dubberly, as individual Defendants to her Section 1981 claim, the Court shall allow Ms. Lambert to add a Section 1981 claim against these individuals.  *See Brown v. Children's Nat. Med. Ctr.*, 773 F. Supp. 2d 125, 135–36 (D.D.C. 2011) (PLF) (explaining that Section 1981, unlike Title VII, allows for personal liability for individuals with supervisory authority who are personally involved in discriminatory activity that violates its provisions); *see also Tnaib v. Document Techs., LLC*, 450 F. Supp. 2d 87, 92 (D.D.C. 2006) (RMU) (explaining that although mere "co-workers" cannot be liable under Section 1981, "individuals with supervisory authority" may be held liable).

**B.      Because Title VII does not provide for individual-capacity liability, Ms. Lambert's proposed Title VII claims against individual employees are futile.**

Ms. Lambert also proposes to join Mr. Driscoll and Ms. Dubberly as individual defendants to her Title VII claim. *See* Dkt. No. 38 at 1, 5–7. As the Defendants correctly note, Title VII does not impose liability on an employer's agents in their individual capacities. Defs.' Opp'n at 4; *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1011 (1995). Although a plaintiff may name an individual employee as a defendant in a Title VII suit, "that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII." *Gary*, 59 F.3d at 1399. A claim against such an employee "necessarily merges with" the corresponding claim against the employer. *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001). Accordingly, only BAC may be held liable for Ms. Lambert's Title VII claim, and her proposed amendments joining Mr. Driscoll and Ms. Dubberly to that claim would not withstand a motion to dismiss.

**C.      Ms. Lambert's proposed DCHRA claims against Mr. Driscoll and Ms. Dubberly are untimely.**

Ms. Lambert also proposes to join Mr. Driscoll and Ms. Dubberly as individual defendants to her DCHRA claims. *See* Dkt. No. 38 at 1. Unlike Title VII, the DCHRA does allow for claims against individuals. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 888–89 (D.C. 1998). However, because Ms. Lambert's administrative complaint of discrimination did not toll the statute of limitations for her proposed DCHRA claims as to Mr. Driscoll or Ms. Dubberly, these claims are untimely and would not withstand a motion to dismiss. Accordingly, the Court shall deny Ms. Lambert's request for leave to add DCHRA claims against Mr. Driscoll and Ms. Dubberly.

When Ms. Lambert filed her original complaint in this case in December 22, the DCHRA had a one-year statute of limitations for most discrimination claims. *See* D.C. Code § 2-

8

1403.16(a) (eff. May 2, 2015 to Mar. 20, 2025).  The D.C. Council later amended the Act to provide for a two-year statute of limitations, effective March 21, 2025.  *See* Fairness in Human Rights Administration Amendment Act of 2024, D.C. Law 25-300, § 2(f), 72 D.C. Reg. 737, 3662 (Mar. 21, 2025).  However, this change is not retroactive.  *Rubio v. Credence Mgmt. Sols., LLC*, No. 25-cv-1784, 2026 WL 1173201, at *5 & n.3 (D.D.C. Apr. 30, 2026) (RBW); *Valentine v. George Washington Univ.*, No. 24-cv-1081, 2025 WL 2029802, at *5 n.5 (D.D.C. July 21, 2025) (RC); *see also Payne v. District of Columbia*, 722 F.3d 345, 352 (D.C. Cir. 2013) (noting that, under D.C. law, "statutes are to be construed as having only a prospective operation, unless there is a clear legislative showing that they are to be given a retroactive or retrospective effect" (quoting *Wolf v. D.C. Rental Accommodations Comm'n*, 414 A.2d 878, 880 n.8 (D.C. 1980))). Therefore, the one-year statute of limitations applies to this case.

Ms. Lambert argues that the administrative complaint that she filed against BAC in June 2022 with the D.C. Office of Human Rights ("DCOHR") should toll the statute of limitations for her claims against Mr. Driscoll and Ms. Dubberly.  *See* Pl.'s Reply at 8–9; Charge of Discrimination, Dkt. No. 7-1 at 4–5.

The timeliness of Ms. Lambert's DCHRA claims depends on this tolling issue.  In general, the statute of limitations for a DCHRA claim is tolled while an administrative complaint is pending before the DCOHR.  *See* D.C. Code § 2-1403.16(a) (eff. May 2, 2015 to Mar. 20, 2025); *Alexander v. Washington Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016). Ms. Lambert separated from her employment in October 2021, filed an administrative complaint in June 2022, and filed her civil complaint in December 2022.  If the time between June 2022 and the conclusion of administrative proceedings is tolled, then it is likely that Ms. Lamberts's December 2022 civil complaint was filed within the applicable one-year statute of limitations,

9

and she may amend her complaint to add her related DCHRA claims. *See* Fed. R. Civ. P. 15(c)(1)(b) (providing that an "amendment to a pleading relates back to the date of the original pleading when" it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"). However, if that time is *not* tolled, then the one-year statute of limitations expired in October 2022, before Ms. Lambert filed her original complaint, and each of her DCHRA claims would be time-barred.

The Defendants argue that tolling does not apply to Ms. Lambert's proposed claims against Mr. Driscoll and Ms. Dubberly because Ms. Lambert's administrative complaint did not specifically identify either of these employees as having committed discriminatory or retaliatory acts against her. *See* Defs.' Mem. at 4–5. The Court agrees. "[W]here a plaintiff's administrative complaint expressly identified discriminatory actions taken by certain defendants but not others, the administrative complaint will not serve to toll the DCHRA's statute of limitations as to claims against those defendants who were not identified in the administrative complaint." *Craig v. District of Columbia*, 74 F. Supp. 3d 349, 367 (D.D.C. 2014) (RC); *see also Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 285 (D.D.C. 2008) (RCL) (concluding that equitable tolling did not apply where defendants had not received "adequate notice and the statutory opportunity to mediate by service of the charges against them as identified respondents"). Because Ms. Lambert's administrative complaint did not specifically allege discriminatory acts by Mr. Driscoll and Ms. Dubberly, the Court agrees that Ms. Lambert's administrative complaint did not toll her proposed DCHRA claims against these Defendants. Accordingly, those claims are untimely and would not withstand a motion to dismiss.

Ms. Lambert notes that, under the doctrine of equitable tolling, a court can sometimes excuse a plaintiff's failure to file within an applicable statute of limitations. Pl.'s Reply at 8–9.

10

However, "a plaintiff is not entitled to the benefit of the equitable tolling doctrine when the limitations period has not run by the time the plaintiff discovers all the facts necessary to support her claim." *Egilman v. Keller & Heckman, LLP.*, 401 F. Supp. 2d 105, 111 (D.D.C. 2005) (HHK) (citing *Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993)). Here, Ms. Lambert has not alleged or argued that she did not know the facts necessary to articulate her claims against Mr. Driscoll or Ms. Dubberly before the statute of limitations expired. Accordingly, equitable tolling does not apply, and Ms. Lambert's failure to file within the limitations period is not excused.

Because Ms. Lambert's proposed DCHRA claims against Mr. Driscoll and Ms. Dubberly are time-barred, they would not withstand a motion to dismiss, and the Court will not allow an amendment to add them.

### D.    Ms. Lambert's proposed allegations of invasion of privacy are untimely and do not state a tort claim upon which relief may be granted.

Ms. Lambert alleges that Ms. Dubberly unlawfully invaded her privacy by contacting her directly "regarding her health and vaccination status." Proposed Am. Compl. at 3, 6. Ms. Lambert alleges that this contact was improper because Ms. Dubberly was not a member of BAC's HR team and did not have "authorization, consent, or medical necessity" to access her medical information. *Id.*

Ms. Lambert's proposed invasion of privacy claim would not withstand a motion to dismiss, for two reasons.

First, Ms. Lambert's proposed claim is untimely. Under D.C. law, an invasion of privacy claim must be filed within one year of the accrual of the claim. *See Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061–62 (D.C. 2014) (citing D.C. Code § 12-301(a)(4)). Ms. Lambert's proposed invasion-of-privacy claim accrued sometime before her separation from

11

employment in October 2021.  Therefore, the statute of limitations for this claim expired, at the latest, in October 2022.  Because Ms. Lambert did not file her complaint in this action until December 2022, her proposed invasion-of-privacy claim is untimely.

Second, Ms. Lambert's allegations do not state an actionable claim for invasion of privacy.  Under D.C. law, "[i]nvasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded." *Greenpeace*, 97 A.3d at 1061 (quoting *Wolf v. Regardie*, 553 A.2d 1213, 1216–17 (D.C. 1989)).  "The four constituent torts are: '(1) intrusion upon one's solitude or seclusion ['intrusion']; (2) public disclosure of private facts ['public disclosure']; (3) publicity that places one in a false light in the public eye ['false light']; and (4) appropriating one's name or likeness for another's benefit ["appropriation'].'" *Id.* (alterations in original) (quoting *Wolf*, 553 A.2d at 1217).

Reading Ms. Lambert's complaint liberally, the Court infers that she intends to allege an intrusion upon seclusion—the only one of the four privacy torts that does not "require as an essential element" that the defendant has published the information that the plaintiff alleges was wrongfully obtained.  *Id.* (citing *Wolf*, 553 A.2d at 1217, and Restatement (Second) of Torts § 652B cmt. a (1977)).

To state a claim for intrusion upon seclusion, a plaintiff must allege "(1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some form of investigation or examination . . . (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns . . . (3) that would be highly offensive to an ordinary, reasonable person."  *Greenpeace*, 97 A.3d at 1061 (alterations in original) (quoting *Wolf*, 553 A.2d at 1217).

12

In this case, Ms. Lambert has not stated a viable claim for intrusion upon seclusion because she has not plausibly alleged that Ms. Dubberly's inquiry regarding her vaccination status "would be highly offensive to an ordinary, reasonable person." *See id.* As the D.C. Court of Appeals has noted, at least one court has declined to find a "highly offensive" intrusion even in a case in which a third party obtained the plaintiff's hospital records without the plaintiff's consent. *See id.* (citing *Chicarella v. Passant*, 494 A.2d 1109, 1114 (Pa. Super. Ct. 1985)). Consistent with this precedent, the Court agrees with the Defendants that—at least in the context of return-to-office efforts amid the COVID-19 pandemic in fall 2021—an inquiry from a colleague regarding COVID-19 vaccination status is not the kind of "highly offensive" intrusion that gives rise to an actionable tort claim. *See* Defs.' Opp'n at 10.

Because Ms. Lambert's proposed invasion of privacy claim would not withstand a motion to dismiss, the Court will not allow an amendment to add it.

E.     **Ms. Lambert's proposed allegations of fraudulent concealment do not state a claim upon which relief may be granted.**

Ms. Lambert next proposes to assert a claim of "Fraudulent Concealment" based on an allegation that the Defendants withheld "vaccine education and outreach material, intended to address vaccine hesitancy, from 89% of its Black workforce," while sharing those resources "only with traveling employees" who were "predominantly white." Proposed Am. Compl. at 6. Ms. Lambert alleges that the Defendants "fraudulently concealed this disparity while simultaneously asserting [they] had provided full transparency and support." *Id.*

Read liberally, Ms. Lambert's proposed claim is best construed as a claim of a fraudulent misrepresentation or omission under D.C. law. *See Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 45 (D.D.C. 2019) (BAH) (explaining that the several decisions of courts in this District discussing elements of "fraudulent concealment" have generally been applying either Maryland law or a

13

principle of D.C. equitable tolling doctrine, rather than a freestanding tort of "concealment").[3]

Under D.C. law, the elements of a claim for fraudulent misrepresentations or omissions are that:

> (1) [the defendant] made a false representation of or willfully omitted a material fact; (2) [the defendant] had knowledge of the misrepresentation or willful omission; (3) [the defendant] intended to induce [the plaintiff] to rely on the misrepresentation or willful omission; (4) [the plaintiff] acted in reliance on that misrepresentation or willful omission; and (5) [the plaintiff] suffered damages as a result of that reliance.

*Id.* (quoting *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130 (D.C. 2015)).

A claim for fraudulent misrepresentations or omissions is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  *Krukas*, 376 F. Supp. 3d at 45. Under these standards, a plaintiff "must state with particularity the circumstances constituting fraud or mistake"—other than "intent" and other "conditions of a person's mind," which "may be alleged generally."  Fed. R. Civ. P. 9(b).

Ms. Lambert's proposed claim falls short of these standards.  Ms. Lambert alleges that the Defendants "withheld vaccine education and outreach material" from most its Black employees and "fraudulently concealed [a] disparity."  Proposed Am. Compl. at 6.  But she does not plausibly allege that the Defendants intentionally prevented her from accessing the same or substantially similar information about COVID-19 vaccines elsewhere or that the Defendants' actions caused her damages.  Accordingly, although Ms. Lambert's factual allegations regarding vaccine resources may be relevant to her race discrimination claims and may properly be included in an amended complaint for that reason, they would not withstand a motion to dismiss for failure to state an independent tort claim.  Accordingly, the Court shall deny leave to add a new claim of "Fraudulent Concealment."

---

[3] As the Defendants correctly note, Ms. Lambert's proposed amendments do not state a plausible claim under the elements often cited as constituting "fraudulent concealment," either.  *See* Defs.' Opp'n at 6–7 (citing *Lee v. Bos*, 874 F. Supp. 2d 3, 6 (D.D.C. 2012) (JDB)).

**F.      Ms. Lambert's proposed allegations of constructive discharge and "procedural malpractice" do not state claims upon which relief may be granted.**

Ms. Lambert next proposes to assert claims of "Constructive Discharge" and "Procedural Malpractice" arising from her separation of employment, which she argues was "misclassified . . . as a resignation without following [BAC]'s own procedures for voluntary exits."  Proposed Am. Compl. at 6.  Ms. Lambert also alleges that she received "[n]o exit interview, confirmation, or written acceptance" of her separation from employment, "violating internal policy and denying [her] due process protections." *Id.*

Ms. Lambert's proposed claims of "Constructive Discharge" and "Procedural Malpractice" do not state freestanding claims upon which relief can be granted.  Ms. Lambert's factual allegations in support of these proposed claims may be relevant to her race discrimination claims and may properly be included in an amended complaint for that reason.   However, because Ms. Lambert's submissions do not identify any cause of action under which her "Constructive Discharge" and "Procedural Malpractice" claims may proceed as independent claims, those claims would not withstand a motion to dismiss, and the Court will not allow an amendment to add them.

**G.      Ms. Lambert's proposed allegations of negligent infliction of emotional distress do not state a tort claim upon which relief may be granted.**

Next, Ms. Lambert proposes to add new a claim of negligent infliction of emotional distress. Proposed Am. Compl. at 7.  The factual allegations that Ms. Lambert offers in support of this proposed claim may be relevant to her discrimination claims and may be added to her complaint for that purpose. *See* Pl.'s Reply at 16 (arguing that the Defendants "undertook coercive and discriminatory actions implicating her emotional well-being, and that severe emotional distress was a foreseeable consequence").   However, her allegations do not state

15

independent tort claims under the restrictive standards that apply to negligent infliction of emotional distress claims. Accordingly, the Court shall not allow an amendment to add such a claim.

To state a claim for negligent infliction of emotional distress under D.C. law, a plaintiff who was not "in danger of physical injury" during the events giving rise to the claim must allege that there is either a "special relationship between the parties" or an "undertaking by the defendant to the plaintiff" that creates a duty to avoid causing emotional harm. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 802 (D.C. 2011) (en banc). Specifically, the plaintiff must allege either that the defendant has "an obligation to care for the plaintiff's emotional well-being" or that "the plaintiff's emotional well-being is necessarily implicated by the nature of the defendant's undertaking to or relationship with the plaintiff, and serious emotional distress is especially likely to be caused by the defendant's negligence." *Id.* at 792. A typical "arm's length" employment arrangement does not create this kind of relationship. *See Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016) (RDM).

Ms. Lambert argues that the Defendants' conduct exceeded the bounds of an ordinary employment relationship and created a relationship that "necessarily implicate[d] [her] emotional well-being." Pl.'s Reply at 15 (quoting *Hedgepeth*, 22 A.3d at 810). However, this argument is unpersuasive. As multiple courts in this district have recognized, an employer-employee relationship alone is not the kind of "special relationship" that can give rise to liability for negligent infliction of emotional distress. *See, e.g.*, *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 31 (D.D.C. 2018) (TNM) (citing *Islar*, 217 F. Supp. 3d at 268), *aff'd sub nom. Robinson v. Wutoh*, 788 F. App'x 738 (D.C. Cir. 2019); *Kennedy v. Berkel & Co. Contractors*, No. 17-cv-1248, 2020 WL 4903896, at *8 (D.D.C. Aug. 20, 2020) (DLF); *White v.*

16

*Washington Intern Student Hous.*, No. 18-cv-2021, 2019 WL 1858298, at *9 (D.D.C. Apr. 25, 2019) (CKK).  Ms. Lambert has not shown that her relationship with the Defendants was one that made serious emotional distress "especially likely" to result from negligence on their part. *See Hedgepeth*, 22 A.3d at 802.  Instead, Ms. Lambert's relationship with the Defendants is among the many relationships in which the primary object and undertaking is not to care for anyone's emotional well-being, but rather "to obtain a financial, commercial[,] or legal objective." *See id.* at 815.  Such relationships do not give rise to tort liability for negligent infliction of emotional distress under D.C. law, even if a defendant's negligent conduct in fact causes distress to the plaintiff. *See id.*

As with Ms. Lambert's proposed "Fraudulent Concealment" claim, Ms. Lambert's factual allegations regarding emotional distress may be relevant to her race discrimination claims and may properly be included in an amended complaint for that reason, but they would not withstand a motion to dismiss for failure to state an independent tort claim.  Accordingly, the Court shall deny leave to add a new claim of negligent infliction of emotional distress.

### H.     Executive Order No. 13,985 does not support an independent claim.

Ms. Lambert alleges that because BAC was a partner of the federal government, its allegedly discriminatory conduct violated Executive Order No. 13,985, which directs federal agencies to take various actions aimed at "advancing equity for all, including people of color and others who have been historically underserved, marginalized, and adversely affected by persistent poverty and inequality.  Proposed Am. Compl. at 7; Exec. Order No. 13,985, 86 Fed. Reg. 7009 (Jan. 20, 2021).

For two reasons, any proposed claim based on this Executive Order would not withstand a motion to dismiss.  First, the Executive Order has been rescinded. *See* Exec. Order No. 14,148, 90 Fed. Reg. 8237 (Jan. 20, 2025).  Second, even by its own terms, the Executive Order "is not

17

intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against . . . any other person." Exec. Order No. 13,985 § 11(d).

In her reply, Ms. Lambert disclaims any intention "to enforce the Executive Order directly" and states that she cited the Executive Order in her proposed amended complaint "solely as contextual and evidentiary support demonstrating Defendants' knowledge, assumed obligations, and the foreseeability of racial inequities relevant to [her statutory discrimination claims." Pl.'s Reply at 16.

Based on Ms. Lambert's representation that she does not intend to assert a separate claim under Executive Order No. 13,985, and because any proposed claim under the Order would not withstand a motion to dismiss, the Court shall not allow an amendment to add such a claim.

**I.     Ms. Lambert's proposed allegations based on "Due Process Norms & Human Rights Standards" do not state claims upon which relief can be granted.**

Next, Ms. Lambert proposes to add a claim that the Defendants "violated domestic norms under Title VII and due process values embedded in U.S. constitutional and international law, including ICERD and the Geneva Convention" by "fail[ing] to engage in a good-faith exemption process, ignor[ing] employee requests, and enforc[ing] arbitrary deadlines despite knowing employees faced documented delays due to the pandemic." Proposed Am. Compl. at 7. Ms. Lambert clarifies in her reply that her proposed amendment "references due process norms and human rights standards as interpretive principles informing her statutory and common-law claims," rather than "to assert a freestanding constitutional claim." Pl.'s Reply at 17–18.

Ms. Lambert's proposed claims under U.S. constitutional law and international law would not withstand a motion to dismiss. Ms. Lambert's constitutional claims cannot succeed because BAC and its employees are not state actors. *See Chandler v. W.E. Welch & Assocs., Inc.*, 533 F. Supp. 2d 94, 102–03 (D.D.C. 2008) (PLF) (dismissing a plaintiff's Due Process

Clause and Equal Protection Clause claims against a former employer because the employer was a private party, not a state actor).  Meanwhile, Ms. Lambert's proposed international law claims cannot succeed because the sources of international law that she invokes do not give rise to private causes of action in U.S. domestic courts.  *See Johnson v. Quander*, 370 F. Supp. 2d 79, 101 (D.D.C. 2005) (RBW) (concluding that the district court lacked jurisdiction to hear claims under the International Convention of the Elimination of all Forms of Racial Discrimination), *aff'd*, 440 F.3d 489 (D.C. Cir. 2006); *In re Iraq & Afghanistan Detainees Litig.*, 479 F. Supp. 2d 85, 115 (D.D.C. 2007) (TFH) (concluding that the Geneva Convention does not "establish[] individual rights that may be judicially enforced via private lawsuits in federal courts"), *aff'd on other grounds sub nom. Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011) .

Based on Ms. Lambert's representation that she does not intend to assert separate claims under the U.S. constitution or international law, and because any such claims would not withstand a motion to dismiss, the Court shall not allow an amendment to add these claims.

**J.      The National Labor Relations Board has exclusive jurisdiction over Ms. Lambert's proposed unfair labor practice claim.**

Finally, Ms. Lambert proposes to add claims under the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.*, alleging failure to bargain in good faith and interference with protected activity.  Proposed Am. Compl. at 7–9.

As the Defendants correctly note, except in limited circumstances that are not present here, the National Labor Relations Board ("NLRB") has exclusive primary jurisdiction over such claims.  *See* Defs.' Opp'n at 9–10 (citing *Price v. Unite Here Loc. 25*, 883 F. Supp. 2d 146, 154 (D.D.C. 2012) (JDB), *aff'd sub nom. Price v. Union Loc. 25*, No. 12-7089, 2013 WL 1267137 (D.C. Cir. Mar. 22, 2013)).  On matters of unfair labor practices, federal courts generally "must defer to the exclusive competence of the [NLRB]." *San Diego Bldg. Trades Council, Millmen's*

*Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 245 (1959). This rule applies to claims that an employer violated its duty to bargain with a union. *United Elec., Radio & Mach. Workers of Am. v. Gen. Elec. Co.*, 231 F.2d 259, 261 (D.C. Cir. 1956).

Ms. Lambert argues that her claim falls within the exceptions to the NLRB's exclusive primary jurisdiction. Pl.'s Reply at 18–20. Some claims do lie within the concurrent jurisdiction of the NLRB and the federal courts. *See Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 758 (D.C. Cir. 2019). However, this concurrent jurisdiction allows a federal court to decide "contractual claims" arising from an alleged breach of a collective bargaining agreement; it does not allow a court to supplant the NLRB's role in determining what constitutes an unfair labor practice. *See id.* Because Ms. Lambert's proposed NLRA claims are not the kind of "contractual claim[s]" over which this court may exercise concurrent jurisdiction, she cannot proceed with those claims here. *See id.*

The Court's ruling on Ms. Lambert's proposed NLRA claims does not foreclose her parallel claims that the Defendants' alleged labor practices "caused collateral harms cognizable under federal and District of Columbia law." *See* Pl.'s Reply at 20; *see also id.* (citing *Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc. 25*, 430 U.S. 290, 302–04 (1977)). As explained elsewhere in this Memorandum Opinion, the Court will allow Ms. Lambert to proceed with some of those claims, while disallowing others on the grounds that the claims would not withstand a motion to dismiss on their own merits. The Court concludes here only that Ms. Lambert's separate claims of unfair labor practices under the NRLA fall within the exclusive primary jurisdiction of the NLRB and cannot proceed in this Court.

For these reasons, Ms. Lambert's proposed NLRA claims would not withstand a motion to dismiss, and the Court shall deny leave to amend to add these claims.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Ms. Lambert's request for leave to amend her complaint is **GRANTED IN PART** and **DENIED IN PART**.  Ms. Lambert may file an amended complaint that (1) includes the factual allegations contained in her proposed amended complaint, Dkt. No. 38; and (2) adds a new race discrimination claim under 42 U.S.C. § 1981, against BAC, Mr. Driscoll, and Ms. Dubberly.  Any such amended complaint shall be filed on or before **July 31, 2026**.  Ms. Lambert's request for leave to amend is otherwise **DENIED**, and any amendments other than those allowed by this Memorandum Opinion and Order shall be stricken.

The Clerk of the Court is respectfully directed to mail a copy of this Memorandum Opinion and Order to the *pro se* Plaintiff at her address of record.

**SO ORDERED.**

**Dated:**  July 7, 2026

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

21